**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PHILLIP MARCELLUS EDWARDS,**

**Petitioner,**

**v.**

**WARDEN, BELMONT
CORRECTIONAL INSTITUTION,**

**Respondent.**

**CASE NO. 2:21-CV-04217
JUDGE SARAH D. MORRISON
Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  This matter has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b)

and this Court's General Order 22–05.  Pending before the Court are the Amended Petition and

Petitioner's Brief in Support of the same (Docs. 7, 8); Respondent's Return of Writ (Doc. 12);

Petitioner's Reply (Doc. 14); and the state court record.  For the reasons that follow, the Magistrate

Judge **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.

## I.     Procedural History

The Court of Appeals for Ohio's Tenth District summarized the relevant procedural history

of this case as follows:

> {¶ 2} A Franklin County Grand Jury returned an eight-count indictment against
> appellant for: (1) possession of heroin equal to or exceeding 250 grams; (2)
> possession of cocaine equal to or exceeding 100 grams; (3) aggravated possession
> of drugs (methamphetamine) equal to or exceeding 100 times the bulk amount; (4)
> aggravated possession of drugs (oxycodone) equal to or proceeding the bulk
> amount; (5) possession of heroin equal to or exceeding five grams; (6) possession
> of cocaine; (7) failure to comply with an order to signal or stop after commission
> of a felony; and (8) failure to comply with an order or signal to stop, causing
> substantial risk of serious physical harm to persons or property.  All offenses

occurred on the date of appellant's arrest, January 12, 2016, which was the culmination of a police investigation involving informant tips, a period of surveillance, a controlled buy of narcotics, and a vehicular pursuit ending in a minor wreck. Counts 5 and 6 involved small quantities of drugs found on appellant's person and in his car at the time of his arrest. Counts 1 through 4 involved large amounts of drugs seized on the same day after a search of a residence frequented by appellant.

{¶ 3} Appellant initially pled guilty to three counts as part of a plea bargain, but later moved successfully to withdraw his plea. The matter proceeded to a jury trial. During the course of trial, the judge replaced a tardy juror with an alternate. The jury returned guilty verdicts on all counts in the indictment.

{¶ 4} After the jury was discharged, the assistant prosecutor handling the case became aware that on the day the jury deliberated, an evidentiary exhibit comprised of 71 oxycodone pills had gone missing in the interval between the time the prosecutor had checked this and other physical evidence out of the prosecutor's evidence room on the morning of the last day of trial and the time the evidence was returned to the evidence room after the jury had been discharged. At the prosecutor's request, the pills and other drug evidence had been sent back with the jury for examination during deliberations. Appellant's counsel filed a motion for new trial based on the disappearance of the oxycodone pills and the inference that one or more of the jurors were responsible for the disappearance and that such conduct had prejudicially influenced the jury's deliberations. The trial court denied the motion for new trial and imposed an aggregate sentence of 25 years' incarceration.

. . . .

{¶ 5} Appellant appeals and assigns the following five assignments of error for our review:

[I.] THE DISAPPEARANCE OF EVIDENCE DURING APPELLANT'S TRIAL, AND THE TRIAL COURT'S SUBSEQUENT REFUSAL TO ORDER A NEW TRIAL, VIOLATED HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

[II.] TRIAL COUNSEL'S PERFORMANCE FELL BELOW THE OBJECTIVE STANDARD OF REASONABLENESS AND CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

[III.] THE TRIAL COURT'S REMOVAL OF JUROR NUMBER 7 CONSTITUTED PLAIN ERROR, PREJUDICED APPELLANT, AND

VIOLATED HIS RIGHTS A JURY TRIAL AND DUE PROCESS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

[IV.] APPELLANT'S CONVICTIONS ON COUNTS ONE THROUGH FOUR WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO CONSTITUTION.

[V.] APPELLANT WAS DEPRIVED OF A FAIR TRIAL DUE TO THE CUMULATIVE ERRORS OF THE TRIAL COURT IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

*State v. Edwards*, 10th Dist. No. 17AP–738, 2019 WL 3383640, *1–2 (July 25, 2019).

On July 25, 2019, the state appellate court overruled all five of Petitioner's assignments of error. *Id*. Thereafter, Petitioner successfully moved for leave to file an untimely appeal in the Ohio Supreme Court. (Doc. 11, PageID # 248, 282.) In his Ohio Supreme Court filings, Petitioner raised the same five allegations of error that he had raised in the state appellate court. (Doc. 11, PageID # 291–92.) On September 1, 2020, however, the Ohio Supreme Court declined to accept jurisdiction over Petitioner's appeal. (Doc. 1l, PageID # 307.)

On August 20, 2021, Petitioner, with the assistance of counsel, sought a writ of habeas corpus pursuant to 28 U.S.C § 2254. (Doc. 1.) On September 28, 2021, Petitioner successfully moved to amend his Petition. (Doc. 5, 6.) In the Amended Petition, he raises the following grounds for relief:

**GROUND ONE:** The Ohio state courts erred by ruling that the disappearance of evidence and the lack of new trial violated Edwards' rights to due process, jury trial and a fair trial; in the alternative, the state courts rulings denying relief resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent and/or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.
. . .

**GROUND TWO:** The Ohio state courts' ruling that the performance of Edwards' trial counsel was not prejudicially ineffective in violation of the Sixth Amendment

of the U.S. Constitution resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, including Strickland v. Washington, and/or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

. . .

**GROUND THREE:** Edwards has moved to withdraw this claim.

. . .

**GROUND FOUR:** The Ohio state courts' ruling that Edwards' convictions were not based upon sufficient evidence to support the verdict resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent including In re Winship and Jackson v. Virginia, and/or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

(Doc. 8, PageID # 78, 80, 83.)

## II.    Standard of Review

The Sixth Circuit Court of Appeals recently discussed the appropriate standard of review for habeas claims brought by state prisoners in *Stermer v. Warren,* 959 F.3d 704, 720–22 (6th Cir. 2020). "Petitions for habeas corpus brought by state prisoners are subject to 28 U.S.C. § 2254, the modern version of which comes from the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")." *Id*. at 720 (citing *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir. 2001); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999)). "AEDPA requires habeas petitioners to exhaust their claims in state court before turning to a federal court for relief." *Id*. (citing 28 U.S.C. § 2254(b)(1)). "And if a state court decides a claim on the merits, that decision is subject to significant deference." *Id.* (citations omitted).

"For a federal court to grant relief in such a case, the state court's decision must have been '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id*. at

4

720–21 (quoting 28 U.S.C. § 2254(d)).  "Under these rules, a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id.* at 721 (citations and internal quotation marks omitted).  "This deference applies even when the state court fails to explain its reasoning, in which case 'the federal court 'must determine what arguments or theories . . . could have supported the state court's decision'" and afford those theories AEDPA deference."  *Id.* (quoting *Sexton v. Beaudreaux*, ––– U.S. –––, 138 S. Ct. 2555, 2558, 201 L.Ed.2d 986 (2018) (per curiam) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102, (2011)).  "Furthermore, 'evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'"  *Id.* (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

"Section 2254(d) also determines which facts a federal court can consider."  *Id.*  "When assessing whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law,' 28 U.S.C. § 2254(d)(1), the reviewing court 'is limited to the record that was before the state court that adjudicated the claims on the merits [.]' "  *Id.* (quoting *Cullen v. Pinholster,* 563 U.S. 170, 181, (2011)).  "Because of this, a district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d)."  *Id.* (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012)). "That said, if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Id.* (citations omitted).

"If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Id*. "Instead, the petitioner's claim is reviewed de novo as it would be on direct appeal." *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). "The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence)." *Id*. at 721–22 (citations omitted).

## III.    Ground One (Due Process Claims)

In Ground One, Petitioner indicates that evidence—71 oxycodone pills—mysteriously disappeared after they were sent to the jury room.  He contends that his rights guaranteed by the Fourteenth Amendment Due Process Clause were violated in two ways: 1) the disappearance of the evidence deprived him of a fair trial in violation of the Due Process Clause; and 2) the state trial court violated his due process rights by denying his motion for a new trial after the evidence disappeared.  (Doc. 7, PageID # 38–39.)  Respondent contends that Petitioner's due process claims are procedurally defaulted because he failed to raise them in a motion for new trial that he brought in the state trial court, and in any event, they are not cognizable, and lack merit.  (Doc. 12, PageID # 351–53.)  The Undersigned generally agrees.

### A.    Petitioner Failed to Present His Due Process Claims to the State Courts

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus.  28 U.S.C. § 2254(a).  But "[b]ecause state courts, like federal courts, are required to enforce federal law, including rights asserted under the Constitution, comity requires that the state courts should have the first opportunity to review the prisoner's federal claim and provide

any necessary relief." *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). "While procedural default is not a jurisdictional bar to review of such a claim," *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (citing *Trest v. Cain*, 522 U.S. 87, 118, (1997)), federal courts ordinarily may not "consider a claim in a *habeas* petition that was not 'fairly presented' to the state courts" absent cause and prejudice to excuse the procedural default, *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citation omitted). "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009). "This does not mean that the applicant must recite 'chapter and verse' of constitutional law." *Id.* at 415 (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)). Instead, to determine when claims have been "fairly presented," Courts ask whether the petitioner: (1) "relied upon federal cases employing constitutional analysis"; (2) "relied upon state cases employing federal constitutional analysis"; (3) "phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right"; or (4) "alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). "Nevertheless, it does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures.'" *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 756 (6th Cir. 2021) (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

### 1.    The "Disappearance of Evidence" Claim Was Not Presented

Plaintiff claims that his due process rights were violated because the disappearance of the evidence deprived him of a fair trial. (Doc. 7, PageID # 40–42.) This claim was not fairly presented to the state courts because Petitioner failed to raise it in his motion for a new trial.

As noted, 71 oxycodone pills disappeared on the final day of Petitioner's trial, possibly during jury deliberations. After the jury was discharged, Petitioner moved for a new trial in the state trial court. (Doc. 11, PageID # 100–01.) But that motion for new trial raised only state law grounds. (*Id.*) Specifically, in the motion, Plaintiff attempted to set forth the text of Rule 33(A)[1] of the Ohio Rules of Criminal Procedure. (*Id.*) Petitioner also asserted that the evidence had been improperly removed or stolen as a result of jury misconduct, and that "created prejudice and/or an unfair bias" because the jurors who took the pills were incentivized to deliberate quickly and find him guilty so that they could abscond with the pills before their crime was discovered or use the pills to which they may have been addicted. (*Id.*) Petitioner's motion for new trial did not cite the Due Process Clause or federal or state cases analyzing the same. (*Id.*) Nor did it describe his claim in constitutional law terms. (*Id.*)

At a hearing on the motion for new trial, the state trial court Judge referred to the "motion for new trial, under Rule 33" and asked counsel to clarify which provision of Rule 33 was being invoked. (Doc. at 13–1, PageID # 964.) Counsel indicated that Petitioner asserted juror misconduct under Rule 33(A)(2). (*Id.*, PageID # 965–66, 970.) Counsel did not, however, indicate that the motion was made on any other legal basis, including the Due Process Clause.

The state trial court denied Petitioner's motion for new trial. (Doc. 13–1, PageID # 1008–09; Doc. 11, PageID #109–10.) On appeal, Petitioner, for the first time, asserted that the disappearance of the evidence violated his rights under the Due Process Clause. (Doc. 11, Page ID #135–36.) But that assertion, which was never made in the trial court, came too late. *Cf. Nian*,

---

[1] Rule 33(A) has five subparts. Ohio Rule Crim. Pro. R. 33(A). In his motion for new trial, Petitioner appears to have inadvertently omitted subpart (3), and misnumbered subparts (4) and (5).

994 F.3d at 756 (finding that a petitioner fairly presented his constitutional claims to a trial court where his motion for a new trial cited the Fourteenth Amendment; alleged that the Constitution required certain standards; cited federal cases employing a constitutional analysis; and offered facts necessary to make a constitutional determination).

Accordingly, Petitioner failed to present this due process claim to the state trial courts, and he asserts no exceptions to the presentation requirement.  Therefore, he has failed to preserve this claim for federal habeas review.

### 2.    The "Motion for New Trial" Claim Was Not Presented

Petitioner also claims that the state trial court violated his due process rights by denying his motion for a new trial.  (Doc. 7, PageID # 37–40.)  Respondent asserts that Petitioner failed to present this claim to the state courts because he failed to raise it in his motion for new trial.  (Doc. 12, PageID 352–53.)  But unlike the disappearance of evidence claim, the first opportunity Petitioner had to challenge the state trial court's decision denying his motion for new trial was *after* the state trial court denied the motion (*i.e.*, when Petitioner appealed the state trial court's ruling on the motion for new trial to the state's intermediate appellate court).

Petitioner, however, failed to adequately avail himself of that opportunity.  In the intermediate appellate court, Petitioner raised three claims, two of which were predicated on the Constitution.  First, he asserted, for the first time, that the disappearance of evidence deprived him of a fair trial in violation of the Due Process Clause.  (Doc. 11, PageID # 135–36.)  As already explained, that claim should have been, but was not, raised in the trial court.  He also asserted, for the first time, that juror misconduct violated his due process rights.  (*Id*., PageID # 137–38.)  Petitioner does not pursue that claim here.

Finally, Petitioner asserted that the trial court abused its discretion by failing to grant his motion for a new trial, and that "constituted a violation of his right to due process as guaranteed by the United States and Ohio constitutions." (*Id.*, PageID #139.) But aside from this brief mention of due process in a section heading, Petitioner challenged the trial court's decision to deny his motion for new trial on exclusively state law grounds. (*Id.*, PageID # 139–42.) That does not suffice. The Sixth Circuit has held that an "isolated allusion to 'constitutional rights to due process and a fair trial'. . . fail[s] to afford the [state] courts adequate notice that [a petitioner] intended to invoke the Due Process Clause." *Katt v. Lafler*, 271 F. App'x 479, 482 (6th Cir. 2008); *see also Slaughter,* 450 F.3d at 236 (where a petitioner alleged that he had been deprived of "due process and a fair trial by an impartial jury" and cited the Sixth and Fourteenth Amendments, he had not "fairly presented" a federal claim to the state courts); *Blackmon v. Booker,* 394 F.3d 399, 400 (6th Cir. 2004) ("[G]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.") (internal citations omitted); *see also Riggins v. McGinnis,* 50 F.3d 492, 494 (7th Cir.1995) ("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.").

Petitioner's challenge to the trial court's decision to deny his motion for new trial did not cite the Due Process Clause or federal cases analyzing the same. (Doc. 11, PageID # 139–42.) Nor did his arguments describe this claim in recognized constitutional terms. (*Id.*) Instead, Petitioner cited Ohio Rule 33(A)(1) and (2),[2] and an Ohio state case for the proposition that "[a]

---

[2] Petitioner's brief actually cited Ohio Rule 33(A)(1); (A)(2); and (A)(3). (Doc. 11, PageID # 139–42.) Given his descriptions of the provisions, it appears that intended to only cite Rule 33(A)(1) and (A)(2), and that the reference to (A)(3) was a typographical error. (*Id.*)

reviewing court can overturn a trial court's decision to deny a motion for new trial under Rule 33 only when [the trial court] abused its discretion in making its ruling." (*Id.*, PageID # 139) (citing *State v. Sanders*, (2010) 188 Ohio App.3d 452, 460 (Ohio Ct. App. 2010)). Indeed, the majority of Petitioner's briefing on this issue was devoted to a discussion of Ohio's abuse of discretion standard for motions made under Ohio Rule 33(A) with mention made that under Ohio law, certain motions for new trial must ordinarily be supported by an affidavit. (*Id.*, PageID # 140–42.)

Accordingly, Petitioner failed to fairly present this due process claim to the state courts. Nor does he argue any exception to the presentation requirement. He is, therefore, barred from asserting this claim here.

### B.    Petitioner's Due Process Claims Lack Merit

Respondent urges that even if Petitioner had presented his due process claim to the Ohio courts, it is not cognizable. Specifically, Respondent asserts that habeas corpus is not the proper mechanism for prisoners to challenge errors or deficiencies in state post-conviction proceedings. (Doc. 12, PageID # 360.) In *Pudelski v. Wilson*, however, the Sixth Circuit held that "[w]hen a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding." 576 F.3d 595, 610 (6th Cir. 2009). Such is the case here.

Petitioner contends that federal courts can review a state trial court's decision to deny a motion for new trial for its consistency with due process. Petitioner is correct. A challenge to the correctness of a trial court's decision to deny a motion for new trial constitutes a non-cognizable federal habeas claim. *See Pudelski*, 576 F.3d at 610. And habeas corpus relief is only available to correct violations of federal law. 28 U.S.C. § 2254(a). "It is not the province of a federal habeas

11

court to reexamine state-court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Therefore, this Court cannot review such a claim to the extent it is premised on state law; it can, however, review such a claim for constitutional error—that is, whether the trial court's denial of a motion for a new trial amounts to a violation of Petitioner's federal due process rights. But to establish such a constitutional due process claim, Petitioner must show that the trial court's ruling was "'so egregious' that it violated his right to a fundamentally fair trial." *Id.* (quoting *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009).

Petitioner has failed to meet that burden. The state appellate court summarized the proceedings that took place in the trial court regarding Petitioner's motion for new trial and analyzed the trial court's unfavorable ruling on it.

{¶ 43} Appellant's first assignment of error asserts the trial court erred in denying his motion for a new trial, which was prompted by the disappearance of 71 Oxycodone pills on the final day of trial, possibly during jury deliberations. Appellant asserts that, although he cannot affirmatively demonstrate the exact circumstances under which the pills disappeared, the high probability that one or more jurors were responsible for the disappearance of the pills establishes a presumption of juror misconduct and, therefore, a violation of appellant's constitutional rights.

{¶ 44} Appellant's counsel filed his motion for new trial on July 28, 2017 asserting the presumed mishandling or theft of the oxycodone pills by one or more jurors had raised a strong presumption of juror misconduct or bias, given the likelihood of a juror rushing deliberations in order to avoid detection of the pill theft. The state responded that it was mere speculation that a juror had taken the pills and proposed that the pills had simply been misplaced, erroneously thrown out by the cleaning crew after hours, or otherwise disappeared in a less-than-nefarious way that would not have impacted the jury. The court held a hearing on the new trial motion and considered testimony and documentary evidence before denying the motion.

{¶ 45} Evidence heard at the hearing generally established the following timeline. At the conclusion of the state's case-in-chief, the assistant prosecuting attorney requested admission of various exhibits, including much of the drug evidence in the case. This included a sealed envelope containing 71 Oxycodone pills. The assistant prosecutor requested some of these exhibits, including the Oxycodone pills, go back with the jury for use in jury deliberations. The various items were placed together in a larger box for this purpose. The court instructed the jurors not

to open any of the sealed bags containing drug evidence. During deliberations, the jury asked for permission to open an exhibit containing empty sandwich baggies taken from 854 Antwerp Road to better compare them with the baggies taken from appellant's person at his arrest. The court specifically allowed the jury to open this exhibit only.

{¶ 46} The jury returned guilty verdicts after 5:40 p.m. on July 20, 2017. The bailiff gathered the evidence from the jury room, noticing the jurors had already placed the individual items back into a large box. The bailiff presented the box of evidence to the assistant prosecutor, who placed it in the prosecutor's secured evidence room in the courthouse. The next morning, July 21, 2017, the same assistant prosecutor retrieved the case evidence and conducted a detailed inventory, discovering that the Oxycodone pills were missing. The assistant prosecutor then retraced his path from the previous day, searching the jury room and courtroom, without finding the pills. During the course of this search, the prosecutor spoke with the bailiff, who stated nothing had been found in the jury deliberation room other than the jurors' notes, which were duly shredded, and a loose document. At this time, the assistant prosecutor notified the trial court and defense counsel of the situation.

{¶ 47} The Franklin County Sheriff's Office assigned Sergeant Bill Duffer to investigate the disappearance of the pills. Sergeant Duffer's report was admitted as an exhibit in the trial court's hearing on the motion for a new trial, and Sergeant Duffer provided direct testimony. Sergeant Duffer interviewed the assistant prosecutor in the case, Daniel Stanley, and the bailiff, Sarah Brandon. Sergeant Duffer also reviewed the physical location and security of the jury room, and checked swipe-card records from the prosecutor's office premises.

{¶ 48} Sergeant Duffer's report determined that bailiff Brandon had not inventoried the evidence at the time it was placed on the table in the jury deliberation room, and during the deliberations the jury took two breaks and the room was left open. At no time did all jurors leave the room at once, or any single juror remain in the room alone. After delivering the verdict, the jurors were escorted back to the deliberation room, where the evidence had remained, to gather their belonging. After their departure, the bailiff gathered up the evidence and presented it to the assistant prosecutor in the case. Later that night, the deliberation room was cleaned by a contracted janitorial service.

{¶ 49} Sergeant Duffer examined video surveillance from outside the courtroom and deliberation room and saw nothing useful. He obtained the door access report for the secured prosecutor's room on the sixth floor, and determined that assistant prosecutor Stanley was the only person to access that room during the pertinent period.

{¶ 50} Sergeant Duffer then interviewed each member of the jury; all denied any involvement in the missing evidence or knowledge of the missing evidence. Based on the jurors' statements, it appeared that no member of the jury would have been

alone with the evidence in the deliberation room at any time. Interviews with the members of the cleaning crew yielded no further information.

{¶ 51} Sergeant Duffer noted that all jurors were willing to take a polygraph, but he concluded this was unnecessary.

{¶ 52} Appellant moved for a new trial under Crim.R. 33(A)(2): "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state." A new trial shall not be granted on this or any other of the allowed grounds of Crim.R. 33 "unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial." Crim.R. 33(E)(5). In addressing claims of juror misconduct, the court therefore must employ a two-step analysis. First, the court will determine whether juror misconduct occurred, and second, if juror misconduct is found, the court will determine whether the misconduct materially affected the defendant's substantial rights. *State v. Taylor*, 73 Ohio App.3d 827, 833 (4th Dist.1991); *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 35 (10th Dist.) The party complaining of alleged juror misconduct must establish prejudice. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 42. Crim.R. 33(A)(2) motions must be supported by affidavit as required by Crim.R. 33(C). *State v. Gibson*, 10th Dist. No. 10AP-1047, 2011-Ohio-5614, ¶ 39. "A trial court does not abuse its discretion by denying a motion or a hearing on such motion for new trial on Crim.R. 33(A)(2) grounds if no affidavits are submitted with the motion." *Id.* at ¶ 40, citing *State v. Tolliver*, 10th Dist. No. 02AP-811, 2004-Ohio-1603, ¶ 118.

{¶ 53} Initially, we note that, although Crim.R. 33(A)(2) motions should be supported with an affidavit, the trial court expressly noted the absence of such an affidavit in the present case but, nonetheless, proceeded with the hearing, apparently accepting that Sergeant Duffer's sworn testimony provided the requisite evidentiary basis to examine the issues raised.

{¶ 54} On the facts developed at the hearing, we find the trial court did not abuse its discretion in determining that no juror misconduct had been shown, and that if juror misconduct were present, no prejudice to appellant resulted. While malfeasance by one or more members of the jury could not be ruled out, other possibilities, such as the cleaning crew discarding an otherwise unremarkable manila envelope with the trash, could not be ruled out; nor could mishandling by the assistant prosecutor or bailiff before or after in-court trial proceedings be ruled out. Even assuming, arguendo, that a juror surreptitiously took the pills, there is no indication, given the evidence in the case, that the jury unduly hastened its deliberations in order to accommodate such a juror's desire to consummate his or her crime. The jury deliberated for nearly three hours in a case in which, as we have already found, the manifest weight of the evidence established appellant's guilt

. . . .

14

{¶ 56} In summary, we find the trial court did not abuse its discretion in denying the motion for a new trial, and appellant's first assignment of error is accordingly overruled.

*Edwards*, 2019 WL 3383640, at *8–10.

The Undersigned does not find that the denial of Petitioner's motion for new trial was so egregious that it constituted a due process violation. As the state appellate court's discussion and the record both demonstrate, Petitioner's motion was brought under Ohio Rule 33(A)(2), alleging juror misconduct. (Doc. 11, PageID # 100–01; Doc. 13–1, PageID # 964, 965–66, 970.) Ohio law requires that motions made under Rule 33(A)(2) be supported by an affidavit. Ohio Crim. R. 33(C). Petitioner's motion was not supported by an affidavit. The trial court nevertheless entertained the motion for new trial. The trial court also held a hearing on the motion and received testimony from the law enforcement officer who had investigated the missing evidence. At the conclusion of the hearing, the trial court Judge ruled from the bench as follows:

> Again, Ohio Rule of Criminal Procedure -- well, Mr. Moore states that he is proceeding on Criminal Rule 33 (A) (2), misconduct of the jury, prosecuting attorney, or witness for the state. Criminal Rule 33 (C) requires an affidavit to support that claim. We do not have an affidavit to support that claim. So, technically, we did not even have to have a hearing, but I did not want to throw this out on a technicality. So here we are. I do think that probably everyone in the courthouse would agree that this is an anomaly and this has never happened in our courthouse before. Probably everyone involved in drugs cases is going to change the way that they handle evidence after this occurrence; however, it is an anomaly and is highly unusual what happened here.

> Sergeant Duffer testified that he could not say that any of the jurors was one of the ones that took the pills, and the question for the jurors was whether Mr. Edwards had possession of the drugs, and they did come to conclude that he did have possession of not only the pills but also a large amount of the heroin and cocaine. So the court is going to deny any motion for a new trial, because there is only -- there is no evidence to support any juror misconduct, and any alleged juror misconduct is speculation at best.

(Doc. 13–1, PageID # 1008–09.)  The state trial and appellate courts both reasonably determined that the evidence at the hearing did not conclusively establish that the oxycodone pills disappeared because of juror misconduct.  The law enforcement officer assigned to the case testified that he could not find any evidence that juror misconduct occurred.  (*Id*., PageID # 990.)  No other evidence of misconduct was offered.  Nor did the evidence establish that Petitioner was prejudiced by the disappearance of the pills.  As the trial and appellate court both explained, there was no evidence that the jury rushed their deliberations in this matter or that there was a lack of evidence to support the jury's guilty verdicts.  On this record, the Undersigned cannot conclude that Petitioner received any less process than he was due on his motion for new trial.  Nor can the Undersigned conclude that the state court's decision to deny the motion for new trial, and the state appellate court's affirmance of that decision, was so egregious that it resulted in a fundamentally unfair trial.  Accordingly, even if Petitioner had properly presented this claim to the state trial courts, it would fail on the merits.

## IV.    Ground Two (Ineffective Assistance Claim)

As previously explained, Petitioner moved the state trial court for a new trial only under Rule 33(A)(2), which pertains to juror misconduct.  (Doc. 11, PageID # 100–01; Doc. 13-1, PageID # 964, 965–66, 970.)  In Ground Two, Petitioner contends that trial counsel should have also moved for a new trial under Rule 33(A)(1), which pertains to irregularities in trial proceedings, and that counsel's failure to invoke that additional basis for a new trial constituted ineffective assistance.  (Doc. 7, PageID # 45–49.)  Respondent urges that this claim lacks merit.  The Undersigned agrees.

After the state appellate court discussed Petitioner's claims under Rule 33(A)(2), it discussed Petitioner's novel invocation of Rule 33(A)(1).

{¶ 55} On appeal, appellant argues for the first time that trial counsel should have moved for a new trial under Crim.R. 33(A)(1), irregularity in the trial proceedings that prevented defendant from having a fair trial. Appellant's arguments in support of this different ground for a new trial raise no material issues not already raised in connection with the motion under Crim.R. 33(A)(2), and thus provide no additional basis for reversing the trial court's decision.

*Edwards*, 2019 WL 3383640, at *10. The state appellate court also discussed Petitioner's claim that his trial counsel was ineffective for failing to move for new trial under Rule 33(A)(1) in addition to Rule 33(A)(2). It wrote:

{¶ 57} Appellant's second assignment of error asserts he was denied the effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶ 58} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. *State v. Hester*, 45 Ohio St.2d 71, 75 (1976).

{¶ 59} Appellant raises two grounds for this on appeal.[3] First, appellant argues trial counsel should have argued under Crim.R. 33(A)(1) in addition to 33(A)(2) in his motion for a new trial. As discussed above, reframing the argument under the different subsection adds nothing to the discussion of the issues on appeal, nor would this have likely affected proceedings at the trial court's hearing on the motion for new trial . . . .

---

[3] In the state courts, Petitioner asserted that trial counsel was ineffective for two reasons, but he only asserts one reason here.

{¶ 60} Appellant has not demonstrated that he failed to receive effective assistance of trial counsel, and his second assignment of error is overruled.

*Id.* at *10–11.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "Only a right to 'effective assistance of counsel' serves the guarantee."  *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The two-part test announced in *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was: 1) deficient, and that, 2) the petitioner suffered prejudice as a result.  *Strickland*, 466 U.S. at 687; *Hale v. Davis*, 512 Fed. App'x 516, 520 (6th Cir. 2013).  Establishing deficient performance by counsel "requires a showing that 'that counsel's representation fell below an objective standard of reasonableness.'"  *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688).  To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Hale*, 512 F. App'x at 520 (quoting *Strickland*, 466 U.S. at 687).  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).  In cases like this one, involving trial performance, a petitioner must establish prejudice by showing that there is a reasonable probability that, but for his counsel's errors, the result of his trial would have been different.  *Strickland*, 466 U.S. at 687.  A reasonable probability is one sufficient to undermine the confidence in the outcome of trial.  *Id*. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105. The Court observed that while "'[s]urmounting *Strickland*'s high bar is never an easy task.' . . . Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) and citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Mindful of these admonitions, the Undersigned finds that the state appellate court analyzed Petitioner's allegations about counsel's failure to invoke Rule 33(A)(1), and reasonably determined that Petitioner could not satisfy either of *Strickland*'s prongs. Specifically, the state appellate court concluded that counsel's performance was not deficient because Petitioner's arguments about the claims that trial counsel could have made under Rule 33(A)(1) were not materially different from the claims that trial counsel made under Rule 33(A)(2). *Edwards*, 2019 WL 3383640, at *10. That was a reasonable determination. Petitioner's arguments under both provisions of Rule 33(A) related to the disappearance of the evidence and Petitioner identified no other irregularities in his briefing to the state appellate court. (Doc. 11, PageID # 143–45.) The state appellate court also determined that Petitioner did not satisfy the prejudice prong because reframing the disappearance of evidence as an irregularity under Rule 33(A)(1) was not likely to

19

have affected the trial court's proceedings on the motion for new trial.  That was a reasonable determination given that the missing evidence, and question of whether it "affect[ed] materially his substantial rights," would have been at issue under either provision of Rule 33(A).  Ohio Crim. R. 33(A).

In sum, the state appellate court concluded that Petitioner could not demonstrate that trial counsel's performance was deficient or prejudicial.  That determination was not contrary to Supreme Court precedent, an unreasonable application of federal law, or an unreasonable determination of facts.  Habeas relief is not warranted for Petitioner's ineffective assistance claim.

## V.  Ground Four (Insufficiency of the Evidence)

In Ground Four, Petitioner contends that his convictions for six counts of drug possession were not supported by sufficient evidence.  (Doc. 7, PageID #56–57.)  Respondent asserts that claim is procedurally barred because Petitioner only raised a manifest weight claim in the Ohio courts.  (Doc. 12, PageID # 353–55.)  Respondent further asserts that Petitioner's manifest weight arguments made in the Ohio courts are distinguishable from the ones made in *Nash v. Eberlin*, 258 Fed. App'x. 761, 765 (6th Cir. 2007), which instructs that a state court's finding that a verdict is not against the manifest weight of the evidence can, in some instances, encompass a finding that a conviction is supported by sufficient evidence.  (*Id*.)  In addition, Respondent asserts that even if Petitioner's manifest weight claim is not procedurally barred, it fails on the merits.  (*Id*. at 369–80.)  The Undersigned agrees with this latter proposition.

Petitioner specifically asserts that the evidence presented at trial did not support his possession convictions because it failed to demonstrate that he possessed large quantities of drugs that were recovered from a house located at 845 Antwerp Road, in Whitehall, Franklin County,

Ohio.  (Doc. 7, PageID # 56–57.)  The state appellate court set forth Ohio's law on possession and constructive possession as follows.

{¶ 35} Possession of a controlled substance may be actual or constructive. *State v. Saunders*, 10th Dist. No. 06AP-1234, 2007-Ohio-4450, ¶ 10, citing *State v. Burnett*, 10th Dist. No. 02AP-863, 2003-Ohio-1787, ¶ 19, citing *State v. Mann*, 93 Ohio App.3d 301, 308 (8th Dist.1993). A person has actual possession of an item when it is within his or her immediate physical control. *State v. Norman*, 10th Dist. No. 03AP-298, 2003-Ohio-7038, ¶ 29; *State v. Messer*, 107 Ohio App.3d 51, 56 (9th Dist.1995). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). "Circumstantial evidence alone may be sufficient to support the element of constructive possession. Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession over the subject drugs. The mere presence of an individual in the vicinity of illegal drugs is insufficient to establish the element of possession, but if the evidence demonstrates the individual was able to exercise dominion or control over the drugs, he or she can be convicted of possession." (Internal citations omitted.) *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 28 (10th Dist.).

*Edwards*, 2019 WL 3383640, at *6.  The state appellate court analyzed the state's evidence that Petitioner constructively possessed the drugs located at the 854 Antwerp Road address.

{¶ 36}  . . . the prosecution presented three types of evidence to demonstrate appellant's connection with 854 Antwerp Road and the drugs recovered therefrom. Police testimony established that appellant's Nissan Maxima, registered in his name, had repeatedly parked there in the evening hours. Police also observed appellant arrive at the controlled buy location in a Honda Pilot moments before parked on Antwerp Road. After the controlled buy, police observed appellant return to 854 Antwerp Road in the Honda Pilot and enter the property with a key. Appellant left Antwerp Road again in the Honda Pilot, and in possession of drugs and drug packaging materials.

{¶ 37} Upon searching 854 Antwerp Road, police discovered a FedEx package addressed to appellant. In a briefcase with large quantities of cash, police found appellant's personal papers, including car titles in his name or under an alias he commonly used. Police found a bag containing men's clothing on the premises, and appellant's subsequent jailhouse telephone conversation indicated he was keeping clothing for himself and his son at the home. Appellant's jailhouse telephone conversations also bemoaned the loss of his money in the police seizure, indicating the cash on the premises belonged to him. Although appellant's answer in the same

conversation was indeterminate, his wife clearly remonstrated him about leaving identifying paperwork at the Antwerp Road residence.

{¶ 38} The jury could reasonably conclude appellant was using the Antwerp Road residence, and its large stash of drugs and cash, as his base of operations leading to the controlled buy, since appellant inferentially left from the address to go to the buy location and, under direct observation from police, returned there immediately afterwards. Shortly thereafter, appellant was arrested in possession of marked money from the controlled buy. Appellant's control of the Honda Pilot vehicle, related to the address through record ownership, further indicated control over the premises. This evidence, if believed, supports a jury verdict that is not against the manifest weight of the evidence with respect to the charges involving drugs seized at 864 [*sic*]⁴ Antwerp Road. Appellant's fourth assignment of error is accordingly overruled.

*Edwards*, 2019 WL 3383640, at *6–7.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

When determining if the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not

---

⁴ The house at issue was located at 854 Antwerp Road, not 864 Antwerp Road. The state appellate court's reference to 864 appears to have been a typographical error.

affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97 (quoting *Jackson*, 443 U.S. at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence.[5] As explained in *Brown v. Konteh*, deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). In either instance, this is a substantial hurdle—one that Petitioner cannot surmount.

Indeed, given these standards, it was not unreasonable for the state appellate court to determine that there was sufficient evidence for a jury to find that Petitioner constructively possessed drugs located inside the house at 854 Antwerp Road. Police testimony established that a license plate reader indicated that a 2000 Nissan registered to Petitioner was often located in the city of Whitehall near the house in the late evening hours, suggesting that he might be sleeping

---

[5] Although the parties do not agree as to whether Petitioner fairly presented his sufficiency of the evidence claim to the Ohio state courts (Doc. 7, PageID # 55–56; Doc. 12, PageID # 353–56), they appear to agree that the state appellate court's determination is entitled to AEDPA deference if this Court reaches this claim on the merits. (Doc. 12, PageID # 369; Doc. 14, PageID # 1066.)

23

there.  (Doc. 13–1, PageID # 443–46.)  Petitioner arrived at a controlled drug buy in a Honda Pilot that had been at 854 Antwerp Road only five minutes earlier.  (*Id*., PageID # 588.)  Police also observed Petitioner return to the house at 854 Antwerp Road after the controlled buy, exit the Honda Pilot, and use a set of keys to let himself in through the front door.  (*Id*., PageID # 605, 623–24.)  After Petitioner left the house at 854 Antwerp Road, he was arrested.  Police searched his vehicle and found wrappings indicative of large amounts of drugs and baggies.  (*Id*., PageID # 499.)  Those baggies were similar in size and shape to baggies that police found when they searched the house at 854 Antwerp Road.  (*Id*., PageID # 500.)

While searching the house at 854 Antwerp Road, police also found a bag, variously referred to as a briefcase or a brown satchel, that contained cash and car titles, some of which had Petitioner's name on them.  (*Id*., PageID # 475, 489.)  Specifically, police found several titles for cars registered to Petitioner and his current or ex-wife at a different address, 864 South Avenue.  (*Id*., PageID # 485–86, 489.)  An officer testified, however, that although 864 South Avenue was the address on those titles and 864 South Avenue was the address that the Ohio BMV had on file for Petitioner, it was not uncommon for people who did not want to be found to fail to update their addresses with the BMV.  (*Id*., PageID # 485–86.)  Moreover, during a recorded phone call, Petitioner complained that police had confiscated his "bread" and a briefcase that contained car titles.  (*Id*., PageID # 600.)

Police also found titles for cars registered to an Oliver Smith in the bag inside the house at 854 Antwerp Road.  (*Id*., PageID # 488–89, 493.)  When police arrested Petitioner, he had a wallet that contained an ID for Oliver Smith, credit cards in Oliver Smith's name, and a passport application for Oliver Smith.  (*Id*., PageID # 488–89, 491–92, 541.)  Police also recovered a

24

Federal Express package from the kitchen table in the house at 854 Antwerp Road, the contents of which included a U.P.S. label addressed to Petitioner at that address.  (*Id.*, PageID # 544–45.)

In light of this record evidence, the state appellate court reasonably found that the state's evidence was sufficient to prove to a jury that Petitioner constructively possessed the drugs located inside the house at 854 Antwerp Road.  The record contained evidence that could support a jury's determination that Petitioner was connected to the house at 854 Antwerp Road, and thus, to the items in it, including the drugs that were seized there.  Accordingly, habeas relief is not warranted on Petitioner's sufficiency of the evidence claim.

## V.      Recommended Disposition

For the foregoing reasons, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

Date: March 16, 2022                            /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE